A. Wesley NEWBY and Hilma L. Newby, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13693.

United States Court of Appeals Seventh Circuit.

Oct. 10, 1962.

---

4. See 11 Fla.Jur. 55, Dower § 21, and cases there cited.

Walter J. Lynwood, Chicago, Ill., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Arthur E. Strout, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

The sole question before us is whether the taxpayer, hereinafter called the petitioner,[1] proved ownership in a patent by reason of an alleged oral agreement in 1949 and a written agreement dated September 15, 1952, and the amendments thereto to qualify for capital gains treatment under Section 1235 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1235. Section 1235 provides, in part, as follows:

"Sale or exchange of patents

"(a) General.—A transfer * * of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a' capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—

"(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or

"(2) contingent on the productivity, use, or disposition of the property transferred.

"(b) 'Holder' defined.—For purposes of this section, the term 'holder' means—

"(1) any individual whose efforts created such property, or

"(2) any other individual who has acquired his interest in such property in exchange for consideration in money or money's worth paid to such creator prior to actual reduction to practice of the invention covered by the patent, if such individual is neither—

"(A) the employer of such creator, nor

"(B) related to such creator (within the meaning of subsection (d)). * * *"

The respondent determined deficiencies in petitioners' income tax for the years 1953, 1954 and 1955. However, 1954 and 1955 are the only years contested by the petitioner.

Wesley Newby, the petitioner, claimed that late in 1949 Harry A. Mart disclosed to him an idea for a "turret-seal cap" that could be used in dispensing lighter fluid. The petitioner agreed to advance up to $10,000.00, and to work with Mart in the development of the device. The petitioner advanced $1500.00 to Mart in April, 1950, and continued through 1952 to make advances to Mart and to others for expenses, materials, tools and dies. On December 20, 1955, a patent was issued to Mart, also applications for patents on improved versions of the "turret-spout" were filed and were granted on September 13 and April 1, 1958. Mart also applied for a design patent for the design of the "turret-spout" on October 12, 1951, and on April 15, 1952 the design patent was issued to him. The petitioner guaranteed payment of attorney's fees in connection with the application for and receipt of these patents.

her husband for each of the years in question.

Early in 1952 Mart formed the Turret Seal Corporation. The petitioner paid the legal fees and costs of incorporation, but received no stock in the corporation at the time.

On March 17, 1952, Mart and Turret Seal Corporation executed a license agreement whereby Mart licensed the Turret Seal Corporation to manufacture turret spouts which were the subject matter of pending applications for United States Letters Patent. In this license agreement Mart states that he is the owner of the patents relative to turret spouts.

On September 15, 1952, the taxpayer and Mart executed an agreement which provided, in part, as follows:

"Whereas, Mart has invented a Combined Valve and Spout Unit (hereinafter referred to as Turret Spout) suitable for use as dispensing caps or tops on containers and has applied for U. S. Letters Patent thereon * * *

* * * * * *

*and Mart is the owner of all right, title and interest in and to said inventions, applications and patent, subject to a license to Turret Seal Corporation;* and

"Whereas, Mart desires to obtain financing for the purpose of producing molds and samples of the Turret Spout and to initiate a sales program; and

* * * * * *

"Whereas, said Turret Seal Corporation will engage in the manufacture and sale of Turret Spouts under said License Agreement; and

"Whereby, Newby because of his confidence in the excellence of the Turret Spout has furnished to Mart certain financing for the purposes as set forth in the paragraphs above.

"Now therefore, in consideration of the mutual covenants hereinafter contained, it is agreed:

"1. *Mart hereby acknowledges the receipt of loans from Newby in the amount of Six Thousand Four Hundred Twenty-three Dollars ($6,-423.00)."* (Emphasis supplied.)

The agreement goes on to provide for certain payments to be made to Newby and assigns an interest in the patent as security for their payment.

On April 9, 1953, and May 27, 1954, the petitioner and Mart entered into agreements amending the agreement of September 15, 1952. These two agreements relate to the issues presented on this appeal only because they amend the amount to which the taxpayer was entitled.

During the years 1954 and 1955 petitioner received payments under terms of the September 1952 agreement as amended. The petitioner reported the amounts received by him in 1954 and 1955 as long term capital gain for the sale of a patent. The Tax Court agreed with the finding of the Commissioner that these amounts were ordinary income and taxable as such. The petitioner claims that by oral agreement with Mart late in 1949 or 1950 they made an arrangement whereby they would become partners if petitioner would advance money to perfect Mart's idea for a turret-seal cap and that he later sold his interest in the patent to Mart. The record discloses that the petitioner characterizes his relationship with Mart as a partnership and he asserts that he therefore possessed an equitable interest in the patent. But there is no evidence of probative value which establishes that the elements necessary to a partnership existed. The Tax Court did not err in concluding that the contention of the petitioner that he owned and sold an undivided interest in the patent to Mart is refuted by the facts that the patent was applied for by Mart, issued to Mart, and assigned by Mart to a corporation controlled by Mart. The contract and the amendments thereto between petitioner and Mart are explicit and there can be no doubts from the language of the agreement but what Mart was the owner of the patent. There is nothing in the tenor of the agreement taken as a whole or any

provision of the agreement which supports a contrary construction.

There is substantial evidence in the record to sustain the Tax Court's conclusion.

Affirmed.